IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

      Plaintiff,

    v.                                                                         No. 1:11-CR-2672-WJ

JOHNNY OTERO,

      Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S *PRO SE* MOTION FOR HOME CONFINEMENT AND COMPASSIONATE RELEASE**

THIS MATTER comes before the Court upon Defendant's *pro se* motion, filed on December 14, 2020 (**Doc. 782**). Defendant moves the Court to transfer him to home confinement pursuant to the Corona Virus Aid Release and Security Act (the "CARES Act") or, in the alternative, to reduce his sentence pursuant to 18 U.S.C. 3582 and the First Step Act of 2018 ("compassionate release"). For the reasons discussed below, the Court finds that Defendant's motion, even when construed liberally, is not well-taken as it requests relief that this Court not authorized to provide. Therefore, the Court DENIES this motion.

**Background**

Defendant, who was arrested in January of 2012, pleaded guilty to one count of Conspiracy to Distribute 5 Grams and More of a Mixture and Substance Containing a Detectable Amount of Cocaine Base, in violation of 21 U.S.C. § 846. Doc. 647; *see also* Doc. 39. In February of 2016, this Court sentenced him to a total term of sixty months imprisonment, followed by eight years of supervised release. *Id.* With credit for pre-sentence custody time, Defendant was released from the Federal Bureau of Prisons ("BOP") on or about May 13, 2016 to begin serving his eight-year term of supervised release. Doc. 718. Defendant's supervised release record is concerning, as it shows

that from November 2017 to February of 2019, Defendant repeatedly violated the conditions of his supervised release. Doc. 760.

On February 26, 2019, the United States Probation Office ("USPO") filed a petition to revoke Defendant's supervised release for the use and possession of alcohol. *Id.* The Court granted the petition and sentenced Defendant to three months in custody followed by thirty-six months of supervised release. *Id.* After release from custody, Defendant exhibited further noncompliant conduct, and on May 22, 2020 the USPO filed a second petition for revocation based on allegations that Defendant used alcohol and committed the offense of Aggravated DWI. *Id.* On September 4, 2020, Defendant admitted that he had used alcohol in violation of the conditions of his supervised release. Consequently, the Court sentenced him to twelve months and one day in custody without any additional term of supervised release being imposed. Doc. 781. Defendant is currently housed at Otero County Prison Facility in Chaparral, New Mexico.

## Discussion

Defendant's motion appears to conflate home confinement, which alters the location where an eligible inmate serves his or her term of incarceration, with compassionate release, which alters the length of the incarceration term. *See United States v. Candelaria*, No. 1:04-CR-75 WJ, 2020 WL 4698510, at *2 (D.N.M. Aug. 13, 2020). Therefore, the Court will construe Defendant's motion as separately requesting each form of relief; the only viable request being the one for compassionate release.[1]

---

[1] The Government does not address Defendant's request for home confinement separately but considers it within the general framework of its discussion opposing his request for compassionate release. The Court addresses it separately here because while the Court has authority to grant compassionate release in its discretion to an inmate who has exhausted administrative remedies, it has no authority to grant a request for home confinement.

2

It is well-settled law that a prisoner has no constitutional right to confinement in a particular place, including confinement at home. *See McKune v. Lile*, 536 U.S. 24, 39 (2002). The BOP retains complete discretion to determine where federal prisoners are housed. *See* 18 U.S.C. § 3621(b); *United States v. Miller*, 594 F.3d 1240, 1242 (10th Cir. 2010) (citing *Moresco v. United States*, No. 92-1108, 1992 WL 372399, at *2 (10th Cir. Dec. 10, 1992) (unpublished)). The BOP has authority to transfer vulnerable inmates to home confinement. *See generally* 18 U.S.C. § 3624(c)(2). The CARES Act, which Congress passed to address the COVID-19 crisis, vastly increased the BOP's statutory authority in this regard and in fact allows the BOP to "lengthen the maximum amount of time the [BOP] is authorized to place a prisoner in home confinement." *See* CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (March 27, 2020). Under this expanded authority—which came into effect on April 3, 2020[2]–inmates "do not need to apply to be considered for home confinement." BOP, *Home Confinement*, https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (Apr. 5, 2020) (last visited Dec. 31, 2020). The BOP states that "[w]hile all inmates are being reviewed for suitability, any inmate who believes they are eligible may request to be referred to Home Confinement and provide a release plan to their Case Manager." *Id.*

It appears that Defendant is making his first request for home confinement to this Court, as his motion does not state whether he made any prior request to the BOP or officials at his facility. Defendant's motion also provides the Court with assurance that he has "a verifiable release plan." Doc. 782 at 1. The Court does not have the authority to review this plan or otherwise assess

---

[2] *See* Office of the Attorney General, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, https://www.justice.gov/file/1266661/download (April 3, 2020); *see also* Office of the Attorney General, *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (March 26, 2020).

3

Defendant's suitability or eligibility for home confinement. Thus, to the extent Defendant seeks to reverse a possible prior BOP decision denying him placement in home confinement, or asks that the Court consider the request anew, both must be denied because the Court lacks authority to consider his request. The unambiguous language of §3624(c)(2), as modified by the CARES Act, specifies that the BOP—and only the BOP—is statutorily authorized to release prisoners to home confinement. *See United States v. Edwards*, No. 17-40093-01-DDC, 2020 WL 2836991, at *1 (D. Kan. June 1, 2020).

## I.   Request for Compassionate Release

"Generally, a federal court may not modify a term of imprisonment once imposed." *United States v. Wilson*, 493 F. App'x 919, 921 (10th Cir. 2012) (citing *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010)). However, Congress has provided a limited exception to this general rule and allowed for certain "compassionate release" sentence modifications under 18 U.S.C. § 3582(c)(1)(A). To justify the type compassionate release that Defendant seeks, the Court must find that "extraordinary and compelling reasons warrant such a reduction." *Id.*

That said, a district court may not consider a request for compassionate release unless and until the prisoner has exhausted all administrative remedies. *See* § 3582(c)(1); *see also United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *3 (D. Kan. Apr. 16, 2020) (discussing administrative exhaustion as a jurisdictional requirement).[3] To effectively

---

[3] Courts appear split on whether the exhaustion requirement is jurisdictional or merely a claims-processing rule. *See United States v. Gamboa*, No. CR 09-1741 JAP, 2020 WL 3091427 (D.N.M. June 11, 2020) (Parker, J.) (citing cases). The Tenth Circuit has not yet decided this issue, but this Court is persuaded by the reasoning in *Read-Forbes* that the exhaustion requirement is indeed jurisdictional and that the Tenth Circuit would conclude as such. Many other courts in this Circuit have concluded likewise. *See, e.g., United States v. Davis*, No. 19-CR-64-F, 2020 WL 2465264, at *2–3 (D. Wyo. May 13, 2020); *United States v. Llantada*, No. CR 14-832 KG, 2020 WL 5204283, at *2 (D.N.M. Sept. 1, 2020) (J. Gonzales). However, even assuming the requirement is a claims-processing rule, the Court would nonetheless deny Defendant's motion on the grounds that he has not made a sufficient showing that he has ever initiated a compassionate release request with his facility.

exhaust under § 3582, a prisoner must make an initial request for compassionate release under 28 C.F.R. § 571.61, and appeal a denial pursuant to § 571.63. *See* § 3582(c)(1)(A); *see also* 28 C.F.R. § 571.60–571.64 (Procedures for the Implementation of 18 U.S.C. § 3582(c)(1)(A)). Alternatively, if thirty days have lapsed from receipt of the request by the warden of the facility where the prisoner is incarcerated with no action by the warden, a district court is empowered to consider the prisoner's § 3582(c)(1)(A) motion.

Here, Defendant has not provided any evidence, or indeed, even pleaded, that he has exhausted his administrative remedies.[4] Even construed liberally, as *pro se* pleadings must be, the motion remains silent as to whether Defendant ever initiated his remedies by requesting relief from the warden of his facility. But even assuming Defendant properly filed a compassionate release request as required by 28 C.F.R. § 571.61, there is no evidence he ever appealed the result of such a request. As explained above, the language of § 3582(c)(A)(1) plainly requires that a defendant exhaust his administrative remedies before seeking relief in the district court. Here, there is nothing before the Court which would allow it to infer exhaustion. Accordingly, Defendant cannot file for relief directly with this Court at this time. *See, e.g., United States v. Blevins*, No. 5:09-CR-15-DCB-JCS, 2020 WL 3260098, *3 (S.D. Miss. June 16, 2020) ("If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute.") (citation omitted)).

Additionally, this Court has no authority to excuse a failure to comply with the mandatory statutory exhaustion requirement. *See United States v. Gonzalez*, No. 18-CR-00130-PAB, 2020

---

[4] The Government notes that Defendant "has not provided evidence that he has exhausted all administrative remedies," but the Response primarily argues that Defendant's request fails on the merits because it fails to identify extraordinary and compelling reasons warranting a sentence reduction and Defendant continues to pose a significant threat to community safety. Doc. 783. The Court will not address the merits of Defendant's request at this time and will limit the basis of its denial to Defendant's failure to show exhaustion.

WL 1905071, at *2 (D. Colo. Apr. 17, 2020) ("[T]he Supreme Court has made clear that 'mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.'") (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016))); *Read-Forbes*, 2020 WL 1888856, at *4 (citing *Malouf v. Sec. & Exch. Comm'n*, 933 F.3d 1248, 1256 (10th Cir. 2019)). Because Defendant has not shown that he has exhausted his administrative remedies, the Court is precluded from granting his request for release.  Accordingly, the Court does not reach the merits of Defendant's compassionate release request.

## Conclusion

The Court is not unsympathetic to Defendant, nor is it ignorant of the impacts of the COVID-19 pandemic on the prison population. However, for all the foregoing reasons, Defendant's motion (Doc. 782) is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE